Cecelia Yawberg v. Commissioner.
Yawberg v. Commissioner
Docket No. 1566-65.
United States Tax Court
T.C. Memo 1966-248; 1966 Tax Ct. Memo LEXIS 34; 25 T.C.M. (CCH) 1274; T.C.M. (RIA) 66248; November 9, 1966
E. Donald DeMuth, 720 Home Federal Bldg., Toledo, Ohio, for the petitioner. Erwin L. Stuller, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: A deficiency has been determined by the Commissioner in the income tax of petitioner for the taxable year 1962 in the amount of $9,575.12. The issues *35 to be decided are (1) whether respondent has erred in including in petitioner's gross income cash paid her on the sale of her tavern business, plus the amount of her debts paid by the purchaser, plus the face amount of a second mortgage note made by the purchaser upon the real property in which the tavern business was conducted and (2) whether respondent has erred in refusing to permit the reporting of petitioner's long-term capital gain on the sale on the installment basis under section 453, Internal Revenue Code of 1954. Findings of Fact Nearly all the facts which are in evidence have been stipulated and are found accordingly. The petitioner resided in Grand Rapids, Ohio, during 1962 and filed her Federal individual income tax return for that year on the cash method of accounting basis with the district director of internal revenue, Cleveland, Ohio. In September 1962, the petitioner sold to Robert T. Barnes a going business known as, and hereinafter referred to as, "Carl's Place," which included in part real estate, building, equipment, and a liquor license. The selling price was $58,500. The sale of Carl's Place was reported on the petitioner's return *36 for the year 1962 on Schedule D, line 5, as "Store Building." The petitioner's adjusted basis for Carl's Place at the time of sale was $18,862.19. The petitioner received in 1962 as consideration for the sale of her property a down payment in the amount of $18,500 and a second mortgage and mortgage note with a face value of $40,000. In 1962 Barnes paid petitioner two $369.96 payments on the second mortgage note. In the stipulation of facts petitioner concedes the correctness of the respondent's determination in disallowing as unallowable deductions $2,367.30 claimed on the petitioner's return as depreciation expenses. Ultimate Finding of Fact In 1962 petitioner received as consideration for the sale of Carl's Place $58,500. Opinion No facts, as distinguished from conclusions, are set forth in the petition and no specific assignment of error is alleged. Even a reading of the briefs is of little aid in discerning a legitimate dispute between the parties. As near as we can determine the contention of the taxpayer is that because the purchaser of her property in 1962 (the only year before us) voluntarily returned it to her (presumably after default in making mortgage payments) *37 in 1964 with an $18,500 mortgage as a lien against it, whereas when he purchased it, the only mortgage encumbering it was $4,966.26, and because the sale transaction cost her $3,500 in sales commission and $64.35 in revenue transfer stamps, she has not only not received any consideration for her property, but has, in fact, suffered a loss. This contention is made in the face of the fact that she stipulates having received the proceeds of the $18,500 mortgage either in cash or the payment by the purchaser of her debts. Underlying her position as expressed in the petition is complete and utter disregard of the necessity of reporting income on an annual basis. Because of that principle the recovery of the property some 2 years after its sale in 1962 is immaterial and irrelevant to any issue herein. Petitioner (assuming proper pleading) might have shown that the $40,000 second mortgage of the property to her was either of no ascertainable fair market value or had a fair market value less than its face on the date of the sale, and thus reduced the amount of her gain, but she has offered no evidence whatsoever on the subject. We are left with no alternative to finding that its fair market *38 value was equal to its face for that is the value given it by respondent, and his determination is presumptively correct. As we view the transaction it constitutes a single sale and purchase of a going tavern business with the transfer to the purchaser of the appurtenant business premises and contents, together with whatever rights petitioner may have had under Ohio law and the regulations of its agency charged with the licensing of liquor vendors to transfer her liquor permit. Section 1001(a) of the 1954 Code provides that the gain from the sale of property is the excess of the amount realized from its sale or exchange over its adjusted basis. The adjusted basis has been stipulated. Section 1001(b) provides that the amount realized from the sale or exchange of property is the sum of any money received plus the fair market value of property (other than money) received. Petitioner has stipulated in effect that she received by payment of cash or the payment of her debts [1] by the purchaser at the time of the sale the amount of $18,500, and we have found as a fact that this payment was a down payment on the purchase price. It is also stipulated that petitioner received in addition *39 thereto a real estate mortgage and note upon the business premises in the face amount of $40,000. The mortgage and note constitute "other * * * property" under section 1001(b) to the extent of its fair market value. For lack of evidence to prove to the contrary, we sustain respondent's determination that its fair market value was equal to its face. It follows, and we so hold, that the amount realized by petitioner upon the sale of Carl's Place in 1962 was $58,500. Section 453(a)[2] is not authority for petitioner's alternative position that she is entitled to report her gain on the installment basis for the reason that petitioner is not a dealer in personal property and does not regularly sell or dispose of personal property. This was a casual sale. Installment reporting is otherwise permitted under these facts only under section 453(b)(1)(A) and (B) as limited by subsection (b)(2)(A)(ii). [3]
*40 Because the down payment of $18,500 exceeds 30 percent of the total purchase price of $58,500, petitioner is not entitled to report her gain on this sale on the installment basis under section 453. We therefore sustain respondent's determination of deficiency. Decision will be entered for the respondent. Footnotes
1. No issue is raised here as to the proper treatment of $477.10 of taxes paid for petitioner by the purchaser.↩
2. SEC. 453. INSTALLMENT METHOD. (a) Dealers in Personal Property. - Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price. ↩
3. SEC. 453. INSTALLMENT METHOD. (b) Sales of Realty and Casual Sales of Personalty. - (1) General Rule - Income from - (A) a sale or other disposition of real property, or (B) a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year) for a price exceeding $1,000, may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a). (2) Limitation. - Paragraph (1) shall apply - (A) In the case of a sale or other disposition during a taxable year beginning after December 31, 1953 (whether or not such taxable year ends after [August 16, 1954] the date of enactment of this title), only if in the taxable year of the sale or other disposition - * * *
(ii) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price.↩